## Buckner v. McEldowney's Ex'r et al.

Oct. 6, 1939.

J. Ashlin Logan for appellants.

B. R. Jouett and Harvey T. Lisle for appellees.

OPINION OF THE COURT BY JUDGE TILFORD—Affirming.

This is an appeal from an order of the Clark Circuit Court overruling appellant's exceptions to the Commissioner's Report of Sale of a farm containing approximately 82 acres formerly owned by M. T. McEldowney, deceased. We are also asked to review the judgment under which the sale was held, but no appeal was taken therefrom.

The exceptions to the Report of Sale question the sufficiency of the proceedings to divest the infant defendants of their interests in the real estate referred to, and since these proceedings, as well as the steps taken prior to their institution, differ radically from those usually employed, it will be necessary to set them forth in some detail.

By the first clause of his will M. T. McEldowney directed the payment of his debts as soon as practical after his death; by the second clause he devised to his wife, Nancy C. McEldowney, all of his property, to be hers "absolutely, and to do with as she may see fit"; by the third clause he nominated the Commercial Deposit Bank of Winchester, Kentucky, executor of his will, and directed—"in the management of my estate said executor will advise and counsel with my wife, Nancy McEldowney, and carry out her wishes and desires"; and the fourth and last clause read as follows:

"If I should be in debt at the time of my death, and there is not sufficient cash on hand or received from other sources with which to pay said indebtedness, my executor may, in order to procure funds with which to pay said debts, mortgage or sell, as my wife may direct, such of my estate, personal or/and real, as she may direct, and if real estate is mortgaged or sold my executor is authorized to execute, with my wife, such instruments as may be necessary to secure such loan or convey title to such property as may be sold."

The following codicil to his will was also admitted to probate:

"As a codicil to my will of date June 17th, 1932, when my estate is fully administered, and all my obligations are paid, it is my wish and desire that my wife shall have one-half of my net estate, and to give to my sister, Mrs. Thomas Ruggles, Five Thousand ($5,000.00) Dollars, to be invested in a farm somewhere in Lewis or Fleming County, Kentucky. At her death it shall go to her daughter, Katherine, and the rest of my estate shall be equally divided with my brother, Charlie, brother, Harry, sister, Fanny Likens, sister, Kate Shaw, and sister, Mima Ruggles. The $5000.00 already given to Mrs. Mima Ruggles shall not be charged against her. She is to have her equal part the same as the other brothers and sisters.

"All obligations or notes given by M. T. and H. R. McEldowney are to be paid out of my estate, if any loss, after collateral attached to notes is sold. See letter which will give statement of all notes and obligations.

"In testimony whereof, witness my signature, this August 9, 1933.

"M. T. McEldowney"

It appears that the estate was heavily indebted, and on September 2, 1938, a suit was instituted in the Clark Circuit Court by "Commercial Deposit Bank, Executor of M. T. McEldowney; Commercial Deposit Bank, Trustee; and Commercial Deposit Bank"; against O. W. McCormick, an unsecured creditor, and Allen Buckner, Executor of Nancy C. McEldowney. The first paragraph alleged that on July 15, 1931, M. T. McEldowney and his wife had executed a deed of trust to the Commercial Deposit Bank as trustee, conveying certain real estate, referred to as the Commercial Deposit Bank Building, to secure the payment of forty bonds of $500 each, of which $13,500 remained unpaid and were due; and the prayer subjoined to the first paragraph was that the Commercial Deposit Bank, which had acquired the bonds, be adjudged the owner thereof, and that the Trustee be directed to sell and convey the real estate, after advertisement, and that the surplus proceeds of sale remaining after the payment of the bonds be applied to the payment of the indebtedness set up in the second paragraph. The second paragraph alleged the death of M. T. McEldowney on February 20, 1934, the

probate of his will, and the qualification of his executor; that his widow, Nancy C. McEldowney, had settled with the beneficiaries under the codicil of his will by paying them $10,000; that the beneficiaries had released their interest in the estate to Nancy C. McEldowney who thereupon became the "sole and only devisee and beneficiary under M. T. McEldowney's will." It was further alleged that Mrs. McEldowney died on July 19, 1935, leaving a will of which the defendant Allen Buckner was the nominated and qualified executor; and that pursuant to the fourth clause of the will of M. T. McEldowney, the executor of his will, at the request of Nancy C. McEldowney, had conveyed to her on February 26, 1935, all of his real estate with the exception of an unimproved lot of small value in Louisville; that in consideration of this conveyance, Nancy C. McEldowney surrendered a claim against the estate amounting to more than $25,000, and agreed in writing that on demand of the executor she would sell so much of the real estate as might be necessary to pay the remaining debts of her husband's estate. It was further alleged that on May 17, 1935, Nancy C. McEldowney, upon the demand of the executor that she dispose of some of the real estate in order to raise funds to pay debts, had mortgaged to the Commercial Deposit Bank, without assuming personal liability, the property described in the first paragraph of the petition, as well as another building in the city of Winchester, to secure a loan of $21,000, the proceeds of which had been turned over to the executor to be used in the payment of debts, but that notwithstanding this application of the proceeds of the loan, which had not been repaid, $3,800 was still due the defendant, O. W. McCormick, by the estate of M. T. McEldowney, and more than $18,000 to the Commercial Deposit Bank, and that the remaining personal property was not sufficient to pay the debts. The prayer subjoined to the second paragraph of the petition was to the effect that the Bank be adjudged a second lien on the property described in the first paragraph and a first lien on the building described in the second paragraph to secure the payment of $21,000 with interest, and that Mrs. McEldowney's executor be directed to sell and convey the real estate covered by the $21,000 mortgage. Filed with the petition as an exhibit was a copy of Mrs. McEldowney's will, by the eighth clause of which she bequeathed and devised her residuary estate to her

nephew, Allen Buckner, for his lifetime with remainder to his children.

On February 23, 1939, an amended petition was filed making the three infant children of Allen Buckner parties defendant to the action. It was alleged that the mortgage for $21,000 had been foreclosed but that there were "other debts and obligations of M. T. McEldowney now due and unpaid amounting to more than $18,000.00 and to pay same it is necessary that the hereinafter described real estate * * * be sold." The real estate referred to is the 82-acre farm, the sale of which is the subject of the exceptions filed by appellant. It was then alleged that none of the beneficiaries of Mrs. McEldowney's will acquired any title to any part of the real estate until all of M. T. McEldowney's debts had been paid; that Mrs. McEldowney's agreement to sell the real estate for the payment of Mr. McEldowney's debts created a trust which her executor was bound to carry out; and that because her executor doubted his power to sell and convey it was necessary to have the Court determine how and by whom it should be sold. The prayer of the amended petition was that the real estate be adjudged subject to the alleged trust and sold either by Mrs. McEldowney's executor or the court's commissioner and the proceeds paid to the plaintiff to be applied to the payment of the debts.

The infant defendants were properly summoned, a guardian ad litem was appointed and made his report, and a judgment was entered adjudging that Mrs. McEldowney took the real estate in question in trust to be sold for M. T. McEldowney's debts; that the infant defendants had no interest therein; that debts of M. T. McEldowney aggregating $17,000 remain unpaid, and that since both executors had "asked or agreed that a sale of the hereinafter described real estate, if ordered by this court, be made by the Master Commissioner of this court, it is not now necessary to here decide whether such sale can or should be made by the executor of Nancy C. McEldowney by virtue of the agreement of February 26, 1935." The judgment then directed the Commissioner to sell the 82-acre farm at the court house door after statutory advertisement. The property was appraised at $10,500; Mrs. Mary M. Hodgkins became the purchaser at the Commissioner's sale, bidding for the property $15,350, and before confirmation as-

signed her bid to the appellant who filed the exceptions, the merits of which we have been asked to determine.

It is apparent that if a judicial sale was necessary to divest the infants of their title to the property, the proceedings adopted were insufficient for that purpose. Civil Code of Practice, Section 489, Subsection 1; Civil Code of Practice, Section 428; Soper et al. v. Foster et al., 244 Ky. 658, 51 S. W. (2d) 927, and authorities there cited. We are not prepared to adopt the contention of M. T. McEldowney's executor that the conveyance of the real estate to Mrs. McEldowney and her agreement with respect thereto impressed the real estate with a trust which her executor could be compelled to execute. The real purpose of the conveyance seems to have been to vest the power of sale in her executor in the event of her death, as it was feared that she might not live long enough to effect, in conjunction with her husband's executor, a sale of the real estate necessary to be sold for the payment of debts. In our opinion the convey- ance was ineffective, as the powers and duties of the parties with respect to the sale of the real estate were fixed by the terms of M. T. McEldowney's will and the title to the property was vested in Mrs. McEldowney by virtue of the will and the release executed to her by the beneficiaries of the codicil. However, if a judicial sale of the real estate was not necessary in view of the pro- visions of M. T. McEldowney's will, the fact that the executor invoked the aid of the court and the fact that the sale was made by the commissioner rather than by the executor would not affect the title of the purchaser provided a fair price was realized. In the case of Betty et al. v. Petrie, 138 Ky. 426, 128 S. W. 320, this court said:

"It is also insisted for appellants that the judg- ment of the circuit court construing the will and au- thorizing the sale of the land by the administrator was and is void as well as the order of the court confirming the sale and directing a conveyance of the land to the purchaser by the commissioner; and that the deed from the latter passed no title to the purchaser. This contention is manifestly untenable. The judgment was unnecessary, as it merely di- rected the administrator to do what he was author- ized by the will to accomplish, and, under that in- strument, he might also have conveyed the land by deed after selling it, but he could also convey it

through a commissioner of the court's appointment, and therefore the deed made by the latter passed a good title to the purchaser."

By the express provisions of M. T. McEldowney's will the executor was authorized to mortgage or sell such of the testator's property as testator's wife might direct and to execute with the wife such instruments as might be necessary to convey title. In the contract which Mrs. McEldowney executed at the time she received the conveyance from the executor it was expressly stipulated that the personal property belonging to the estate was wholly insufficient to pay the debts, and "that in order to pay the indebtedness of the estate it will be and is necessary to sell all of decedent's real estate and convert same into personalty, and accordingly first party (Mrs. McEldowney) does, pursuant to the conditions contained in the will of M. T. McEldowney, direct and agree that same be sold so as to secure funds with which to pay said indebtedness." Section 3888 of the Kentucky Statutes expressly provides that an executor may sell and convey land "which the will directs or devises to the executor or to another person to be sold, or gives a discretionary power to sell, if no other person be thereby appointed for that purpose, or if the person so appointed shall refuse to perform the trust, or die before he shall have completed it." Since Mrs. McEldowney died before the real estate was sold, we are of the opinion that the executor, under the statute, could have made a valid sale of M. T. McEldowney's real estate, and that the fact that he invoked the aid of the court in making the sale did not invalidate the title. As before noted, the real estate involved in this litigation was appraised at $10,500 and sold at $15,350, and it is nowhere claimed that the price was inadequate or that the sale was unfairly or improperly conducted. Moreover, we have the written declaration of Mrs. McEldowney that a sale of M. T. McEldowney's real estate was necessary in order to raise sufficient funds for the payment of his debts, and this fact is not disputed by anyone. Hence, it follows that the order overruling appellants' exceptions to the report of sale was proper, and is hereby affirmed.